UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | Criminal Action No.: 17-10181-IT |
| ANDRE PARHAM-RANKIN, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT ANDRE PARHAM-RANKIN'S
SENTENCING MEMORANDUM**

Defendant Andre Parham-Rankin, by and through his undersigned counsel, hereby

submits this Memorandum in connection with his sentencing in the above-captioned matter,

which is scheduled for Friday, February 9, 2018, at 2:30 p.m.  As explained below, Mr. Parham-

Rankin respectfully requests that this Court impose the agreed-upon sentence described in the

parties' Plea Agreement in this case: thirty-six (36) months of incarceration, followed by a six (6)

year period of supervised release, along with the required mandatory special assessment of $200.

Such a sentence is wholly consistent with the purposes set forth in 18 U.S.C. § 3553.

A. <u>**Procedural and Factual Background**</u>

On June 14, 2017, Mr. Parham-Rankin was named in a one-count Indictment charging

him with distribution of cocaine base within one-thousand (1,000) feet of a school in violation of

21 U.S.C. § 860 and 21 U.S.C. § 841(a)(1).  The drug distribution charge against Mr. Parham-

Rankin related to a sale of .63 grams of cocaine base for $80.00 by Mr. Parham-Rankin to a

confidential source that had occurred more than one year earlier, on May 18, 2016.  *See* PSR ¶¶

13-20.  Portions of that transaction were recorded by audio and video recording.  *Id.*

1

On June 15, 2017,  Mr. Parham-Rankin was arrested at his residence at 130A Eustice Street, Roxbury, Massachusetts.  PSR ¶¶ 21-24.  During the course of that arrest, agents identified certain quantities of marijuana that were in plain view in Mr. Parham-Rankin's bedroom.  PSR ¶ 24.  Federal agents thereafter obtained a warrant to search the premises.  PSR ¶ 25.  During the course of that search, agents found additional quantities of marijuana as well as two firearms.  *Id.*

Mr. Parham-Rankin made his initial appearance in this Court on June 15, 2017, and he was subsequently detained.  PSR ¶ 1. On September 18, 2017, he pled guilty to a two-count First Superseding Information.  Count One of that First Superseding Information repeated the drug distribution charge that had been set forth in the Indictment.  PSR ¶ 2.  Count Two of the First Superseding Information charged Mr. Parham-Rankin with being an Unlawful User of a Controlled Substance in Possession of a Firearm and Ammunition in violation of 18 U.S.C. § 922(g)(3) and § 924(a)(2).  PSR ¶ 2.

**B.  Mr. Parham-Rankin's Personal History**

Andre Parham-Rankin is a twenty-one year old man who has resided in Boston, Massachusetts for his entire life.  Mr. Parham-Rankin's father died when he was approximately two years old, and he was raised solely by his mother.  PSR ¶ 61.  While he has maintained a close relationship with his mother and his three half-sisters, there is little doubt that Mr. Parham-Rankin had a challenging childhood.  *Id.* Mr. Parham-Rankin's mother has suffered from significant substance abuse and other health issues,  PSR ¶¶ 62, 65, and  DYS records dating back to 2003 (when Mr. Parham-Rankin was eight years old) reflect that he was periodically committed to the Department of Children and Families (DCF) during his childhood.  PSR ¶ 61.

Mr. Parham-Rankin's challenging childhood situation, coupled with his own poor choices, unfortunately led him to several run-ins with law enforcement during his childhood. Between 2009 and 2012, he was adjudicated delinquent and committed to DYS for his role in connection with several robberies.  PSR ¶¶ 46-48.  In 2015, when he was eighteen, he was charged with possessing a dangerous weapon (a folding knife).  PSR. ¶ 49.  That charge, his only adult conviction, was continued without a finding.  *Id*.

Despite the significant personal challenges he has faced, Mr. Parham-Rankin has shown some significant promise.  As his high school years progressed, his behavior improved, and he obtained his high school diploma in June 2015.  PSR ¶ 89.  Mr. Parham-Rankin also had a positive experience with Youth Options Unlimited ("YOU Boston"), which provided him with various work opportunities in 2013 and 2014.  While participating in that program, he completed a six-month internship at City Hall, during which he "had good attendance and a good attitude." PSR ¶ 90.  Mr. Parham-Rankin also had a productive experience working at a bookstore in Boston during 2014 and 2015.  PSR ¶ 91.

There is no doubt that at least some of Mr. Parham-Rankin's difficulties stem from his substance abuse issues.  Mr. Parham-Rankin began using marijuana at the early age of 12, developing a habit that continued through his date of arrest in this case.  PSR ¶¶ 26, 82.  He has also been a regular consumer of alcohol since his early teens.  PSR ¶ 81.  In addition, since approximately 2016, he has become a regular user of Percocets.  PSR ¶¶ 83-84.  While he has periodically received evaluations from DYS and DCF, *see* PSR ¶¶ 77-78, it does not appear that he has ever participated in any substance abuse treatment.  PSR ¶ 85.  Equally important, mental health evaluations from DYS and DCF reflect that, through therapy, Mr. Parham-Rankin has

"demonstrated increased level of insight into the gravity of his behavior patterns," but that he has not yet had the level of mental health therapy and treatment that he likely needs.  PSR ¶¶ 77-78.

Mr. Parham-Rankin has maintained a good relationship with his current girlfriend, Monet Santos for approximately four (4) years.  PSR ¶ 72.  Ms. Santos described Mr. Parham-Rankin as a "good person" who has never been violent to her.  *Id.*  He has also maintained a close relationship with his various half-sisters, who remain strongly supportive of him.  PSR ¶ 70.

### C.  **The Parties' Plea Agreement.**

The United States and Mr. Parham-Rankin have entered into a binding plea agreement in this case pursuant to Rule 11(c)(1)(C).  Pursuant to that Plea Agreement, the parties have agreed to recommend a sentence of thirty-six (36) months of incarceration, six (6) years of supervised release, and a mandatory special assessment of $200.00.  *See* Plea Agreement ¶ 5.[1]

### D.  **Application of the Sentencing Guidelines.**

There is no dispute regarding the proper calculation of the sentencing guidelines in this case.  *See* Plea Agreement ¶ 4.  The Parties agree that Mr. Parham-Rankin's initial Adjusted Offense Level is **20,** which should be reduced by three (3) levels due to his plea, for a Total Offense Level of **17.**  *See* Plea Agreement ¶ 4.  The Probation Office agrees with this calculation. PSR ¶¶ 34-44.

There is also no dispute that Mr. Parham Rankin's properly-calculated criminal history score is seven (7), which is increased by two points pursuant to U.S.S.G. § 4A1.1(d).  *See* PSR

---

[1] The parties have also agreed that the sentence should include an order of forfeiture, and a fine within the guideline range unless the Court determines that Mr. Parham-Rankin is unable to pay, and unlikely to become able to pay any fine.  *See*  Plea Agreement ¶ 5.  In light of Mr. Parham-Rankin's financial condition, *see* PSR ¶¶ 93-95, the Court should not impose any fine in this case.

¶¶ 50-51.  Accordingly, his final criminal history score is nine, resulting in a criminal history category of **IV**.  *See* PSR ¶ 52.

A Total Offense Level of **17** and a criminal history category of **IV** would result in a guideline imprisonment range of thirty-seven (37) to forty-six (46) months.  *See* PSR ¶

### E.  Mr. Parham-Rankin's Criminal History Category Substantially Over-Represents the Seriousness of Mr. Parham-Rankin's Criminal History.

Notwithstanding the foregoing calculations, Mr. Parham-Rankin respectfully submits that the calculated criminal history category of **IV** substantially overstates the seriousness of his criminal history.  *See* Defendant's Objection #1 to the PSR; *see also* U.S.S.G. § 4A1.3(b).  Specifically, Mr. Parham-Rankin notes that *six* of the seven points used to calculate his criminal history category relate to incidents that occurred more than six years ago when he was a juvenile.  *See*  PSR ¶¶ 46-48.  Indeed, four of those six points involve incidents from 2009 and 2010, when Mr. Parham-Rankin was thirteen and fourteen years old, respectively.  PSR ¶ 46-47.  Moreover, those two older juvenile offenses only contribute to Mr. Parham-Rankin's criminal history calculation because he was released from DYS custody in July 2011, just below five years before the instant offense was committed in May 2016.  *See* U.S.S.G. § 4A1.2(d)(2)(A).  Had Mr. Parham-Rankin been released from DYS custody a mere two months earlier in 2011, his criminal history score would be **5**, resulting in a final criminal history category of **III**.

Section 4A1.3(b) of the United States Sentencing Guidelines allows a sentencing court to depart downward if "reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes."  U.S.S.G. § 4A1.3(b)(1).  Courts applying such departures have often considered not only the defendant's age at the time of the prior offenses but also the age of the prior offenses themselves, in weighing whether the criminal history

calculation over-represents the seriousness of that criminal history.  *See, e.g., United States v. Hammond*, 240 F. Supp. 2d 872, 877 (E.D. Wis. 2003).

Here, the age of Mr. Parham-Rankin's two earliest juvenile convictions (dating to 2009 and 2010), coupled with his own age at the time of those convictions (13 and 14), are sufficient to support a downward departure to a criminal history category of **III**. U.S.S.G. § 4A1.3(b). Indeed, the probation officer herself has identified the overstatement of Mr. Parham-Rankin's criminal history as a possible grounds for departure.  *See* PSR ¶ 118.

Finally, it bears noting that the impact of any such departure on the result here would be modest, and would be wholly consistent with the parties' plea agreement.  Specifically, a departure to a criminal history category of **III** would result in an applicable guideline sentencing range of 30-37 months for Mr. Parham-Rankin.   Thus, the parties' proposed sentence of thirty-six (36) months would fall squarely within that applicable guideline range.

### F.  The Court Should Accept the Agreed-Upon Disposition in the Parties' Plea Agreement.

In any event, the Court should accept the disposition proposed by the parties in this case. As explained above, if the Court departs downward by one criminal history category, the proposed disposition is squarely within the guideline sentencing range.  And even in the absence of such a departure, the proposed disposition is only one month below the otherwise applicable guideline range of 37 to 46 months.

Far more significantly, the proposed sentence adequately considers the need for the sentence to reflect both the seriousness of Mr. Parham-Rankin's offenses and Mr. Parham-Rankin's youth and limited adult criminal history.  It does so by coupling a three-year incarcerative sentence with a six-year term of supervised release.  During that incarcerative period as well as that lengthy period of supervised release, Mr. Parham-Rankin will have an

opportunity to avail himself of the treatment and assistance he needs to become a productive member of society.  The structure of the proposed sentence provides Mr. Parham-Rankin with the ability to reshape his life and rejoin the community in the not-so-distant future, while ensuring that he has received a punishment that appropriately reflects the seriousness of the offenses he has committed.  18 U.S.C. § 3553(a).

## CONCLUSION

For all the foregoing reasons, Defendant Andre Parham-Rankin respectfully requests that this Court accept the parties' Plea Agreement and impose a sentence of thirty-six (36) months, followed by a supervised release term of six (6) years, with a special assessment of $200.00 and forfeiture as requested by the United States.  Defendant further requests that this Court waive the imposition of any fine in this case on the grounds that he lacks the ability to pay, and that it include in any sentence a recommendation that Mr. Parham-Rankin participate in the Bureau of Prison's 500-hour Residential Drug Treatment Program (RDAP).

Respectfully submitted,

 /s/ Daniel J.Cloherty
Daniel J. Cloherty (BBO#565772)
dcloherty@toddweld.com
TODD & WELD, LLP
One Federal Street, 27th Floor
Boston, MA 02110
Tel (617) 720-2626
Fax (617) 227-5777

Date:  February 5, 2018

**CERTIFICATE OF SERVICE**

I, Daniel J. Cloherty, hereby certify that this document has been filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 5, 2018.

 /s/ Daniel J. Cloherty
Daniel J. Cloherty